**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

KYTCH, INC.,

                Plaintiff,

v.

TAYLOR COMMERCIAL FOODSERVICE,
LLC, DBA TAYLOR COMPANY,

                Defendant.

No. _____

Jury Trial Demanded

**COMPLAINT**[1]

1.      McDonald's is best known for its world-famous burgers, fries, and broken ice cream machines.  The problem is so widespread that even the McDonald's communications team has tweeted about the issue:



2.      Thousands of frustrated customers complain about the broken machines, and McDonald's operators are forced to pay for costly repairs and maintenance to keep the machines up and running.

---

[1] Kytch pleads the following recitals with knowledge of its own conduct and on information and belief of the behavior of Defendant Taylor Company and third parties.

3.    Some franchise operators have reported shelling out thousands of dollars per month in service fees to Defendant Taylor Company ("Taylor"), the manufacturer of the machines, through its many franchised distributors.

4.    Despite these widespread issues, McDonald's and Taylor have failed to meaningfully improve the machines, and the fast-food giant has even granted Taylor exclusive rights to supply kitchen appliances to more than 13,000 retail locations in the United States. This arrangement generates millions of dollars of revenue for Taylor and its network of franchised distributors.

5.    McDonald's allows Taylor's monopoly to continue for two reasons: ***first,*** independent owner operators—and not McDonald's itself—pay for Taylor's costly service and repair fees. ***Second,*** Taylor develops new commercial kitchen products exclusively for McDonald's.

6.    This lucrative scheme between McDonald's and Taylor continued uninterrupted for years until a tech startup developed the "Kytch Solution," a low-cost, data-driven fix for McDonald's broken C602 machines that one McDonald's operator described as "very, very, very, finicky."

7.    Jeremy O'Sullivan and Melissa Nelson co-founded Kytch, Inc. and invented the Kytch Solution, an independently developed IoT computer device with proprietary software and an online interface that allows customers to monitor and control soft-serve machines remotely. The Kytch Solution retrieves data from McDonald's soft-serve machines, displays it on Kytch's user-friendly interface, and adjusts settings hidden deep in the machines, which can prevent outages before the machines can detect an error. By delivering performance data directly to its

customers, predicting errors, and adjusting machine settings, Kytch reduces machine downtime and minimizes the need for costly repair appointments.

8.      In 2019, Kytch launched a confidential product trial (the "Kytch Trial") after dedicating significant capital to develop the solution.  The product trial allowed Kytch to aggregate and analyze machine hours to create automated adjustments that reduce the machines' downtime.  By analyzing this customer data in real-time, Kytch developed and fine-tuned a proprietary alert and notification system wildly popular with customers, launching Kytch's rapid market growth and instant success.

9.      By contrast, McDonald's and Taylor have spent twenty years attempting to develop their own IoT solution for the broken machines.  But the competing product (unlike Kytch's) will not permit users to fix the broken machines—only to monitor them in a limited fashion.  This enables Taylor to retain the revenue from its lucrative repair business.  Regardless, McDonald's and Taylor's limited IoT product, called "Open Kitchen," has never launched—because Taylor is not a software company and it lacked the knowhow.  Recognizing Taylor's limitations, in April 2019, Taylor's parent company, Middleby Corporation, purchased a tech company called Powerhouse Dynamics ("PHD") to try to modernize Taylor's machines.  But these efforts to date have faltered.

10.     By the end of 2019, McDonald's tabled Taylor's proposed solution as premature for its restaurants.  The project remained dormant until a February 2020 *Business Insider* article about Kytch highlighted many of the problems with Taylor's machines and described Kytch as a viable solution to "correct[] unnecessary malfunctions" that cause downtime.

11.     The article described Kytch's success and explained that McDonald's operators were relying on the Kytch Solution to manage Taylor's finicky machines.  The positive coverage

about Kytch angered McDonald's. Taylor's CEO described McDonald's leadership as "all hot and heavy about" Kytch's successes that were described in the article. So the two companies joined forces to drive Kytch out of the marketplace.

12. Unable to compete fairly with Kytch, McDonald's and Taylor enlisted a group of Kytch Trial participants to develop a competing product that would prevent Kytch from fixing the machines. McDonald's and Taylor relied on Taylor's franchise distributors—including TFGroup LLC ("TFG")—to identify Kytch's customers and to obtain Kytch's innovative technology.

13. McDonald's and Taylor held bi-weekly meetings devoted to copying Kytch's technology from the Kytch Trial participants. Meeting minutes describe focus group sessions with Kytch customers and confirm that Taylor accessed valuable and nonpublic insights into Kytch's features, user experience, customer preferences, and alert management protocols—"[f]eatures from Kytch" that McDonald's and Taylor admitted "we're lacking."

14. McDonald's Director of Global Equipment, Mike Zagorski and Taylor COO Jim Minard accessed the password-protected portions of Kytch's online interface, the Kytch Solution Platform ("KSP"), during a Zoom conference that McDonald's scheduled for June 23, 2020.

15. TFG improperly obtained a physical Kytch Solution Device ("KSD") from Tyler Gamble in May 2020, and Gamble provided TFG his login credentials to the KSP the following month. Using this unauthorized access, TFG sent Taylor screen captures depicting password-protected portions of the KSP. And McDonald's, Taylor, PHD, and TFG coordinated to add features to Open Kitchen using feedback from Kytch's customers based on their user experience with Kytch.

16.     Despite this insider access to Kytch's confidential product trial, McDonald's and Taylor's Open Kitchen could not keep up with Kytch.  In mid-October 2020, after having access to the Kytch Solution for months, Open Kitchen was still not ready to commercialize.

17.     Kytch was the only product on the market that was positioned to fix the soft-serve machines at McDonald's.  Kytch soon gained market dominance after the largest organization of independent McDonald's operators—the National Owners Association ("NOA")—endorsed Kytch at its national conference.

18.     McDonald's took note and met with Taylor after the endorsement.  According to Taylor's internal emails, "McDonald's [was] putting all of their eggs in this basket to fight Kytch" because "[t]hey have nothing else ready from their own IT Team."

19.     In the days that followed, McDonald's Director of Equipment, Mike Zagorski, directed that "[t]hings need to go much faster" with Taylor's Open Kitchen development, which was moving at a "turtle[']s pace."  McDonald's also warned Taylor that independent restaurant operators were demanding that McDonald's integrate Kytch into the McDonald's system.  This threatened to undermine Taylor's longstanding service and repair racket that the new Open Kitchen device was being designed to protect.  McDonald's and Taylor needed to buy more time to get Open Kitchen to the market.

20.     To that end, McDonald's and Taylor worked together to create a stall tactic. Together they fabricated bogus "safety" claims to mislead Kytch's customers into believing that safety testing determined that the Kytch Solution would cause "serious human injury" to users— claims that are, and that McDonald's and Taylor both knew at the time to be, demonstrably false.

> **Dear Operators,**
>
> We are pleased to share that the McDonald's GSSS-Equipment Team, in partnership with the NSLC Equipment Sub-Team, has been working on a strategic connectivity solution with Taylor for their Shake Sundae machine. This solution will allow operators to receive text updates from their machine when it's down, and provide data on products dispensed, as well as other relevant information, to help restaurants keep the machine running in its optimal condition. This solution is being designed with long term benefits in mind, and would enable future connection with other equipment in the restaurants.
>
> *The Taylor Shake Sundae Connectivity (TSSC) is currently in test with NSLC operators and the current target for release to the US market is by the end of Q1, 2021.*
>
> IMPORTANT NOTE: We have become aware that a few operators may be using an unapproved aftermarket technology, Kytch, on their Shake Sundae machine. As a reminder, any operator that is using this aftermarket "add-on" to any of their machines, <u>will completely void any existing OEM equipment warranty</u>. Additionally, any machine failures that are associated with the installation of Kytch during or after warranty expires, will be the sole responsibility of the operator, not the OEM supplier. The Kytch device allows complete access to all aspects of the equipment's controller and confidential data, including areas where only certified technicians should have access, creating potential equipment reliability issues without the restaurant's knowledge or ability to stop it. Even more concerning, McDonald's has recently determined that the Kytch device creates a potential very serious safety risk for the crew or technician attempting to clean or repair the machine, given that the Kytch controller may cause the device to change its operation or continue running during cleaning or maintenance, in a manner that can cause serious human injury. As such, McDonald's strongly recommends that you remove the Kytch device from any machines and discontinue all use, and is reminding you that any continued use is not approved and is at your sole risk.
>
> For any immediate questions or concerns, please contact any one of the following individuals below:
> * Taylor – Scott Nicholas, scott.nicholas@taylor-company.com
> * McDonald's GSSS - Equipment Engineering, Mike Zagorski, mike.zagorski@us.mcd.com
> * McDonald's GSSS – Equipment Supply Chain, John Sulit, john.sulit@us.mcd.com

21.    McDonald's and Taylor were so willing to go out of its way to disparage and defame the KSD because they needed a pretext to "promote the new connectivity platform" that McDonald's and Taylor needed time to develop and market to the independently-owned restaurants.

> **From:** Nicholas, Scott
> **Sent:** Tuesday, October 27, 2020 7:18 AM
> **To:** Dobrowolski, Jeremy <Jeremy.Dobrowolski@Taylor-Company.com>
> **Subject:** Re: US Comm to Operators on Taylor SS Connectivity
>
> I am a bit in shock that they are willing to take such a strong position. Beyond their Kytch statement, I think we want to be promote the new connectivity platform as a PHD concept. If the names Kytch and Taylor are the only names used, I feel there will be unnecessary hard feelings towards us.

22.    The claims in the ad about Kytch are demonstrably false and materially misleading to consumers.  ***First,*** contrary to their assertions, McDonald's and Taylor have filed sworn

declarations that they never tested the Kytch Solution.[2] Both McDonald's and Taylor tried to obtain the devices through Kytch, but they were unwilling to sign binding NDA/non-compete agreements to do so. ***Second,*** Intertek, an industry leader in quality and safety product testing, has certified that Kytch satisfies all electrical safety requirements in accordance with Underwriters Laboratories (UL) and FCC regulations. These are the same standards that apply to ***Taylor's*** soft-serve machines used in McDonald's locations throughout North America. ***Third,*** Kytch was founded for the very purpose of, and has been in fact, ***improving*** the safety and reliability of the soft-serve machines at McDonald's, and Kytch has never received a single report of injury caused by the Kytch Solution. ***Fourth,*** far from being comparatively more dangerous than Taylor's competing device, the Kytch Solution integrates (and is constrained by) the soft-serve machines' safety mechanisms. For example, when the freezer door is removed exposing interior parts of the machine that might create a safety risk, a magnetic interlock system disables motor function to protect the operator from injury, and Kytch cannot operate the machine remotely. Thus, while Kytch does have the ability to remotely control the machine, it is limited by Taylor's existing control mechanisms—including this magnetic interlock system—to ensure safety. ***Fifth***, Kytch's interface gives users complete monitoring and control, in real-time, of the Kytch Solution's functions.

23.    Because of these safeguards and certifications, there is compelling direct evidence that conclusively disproves the claims that the Kytch Solution is unsafe and uncontrollable.

---

[2] Kytch has also filed suit against Taylor, TFG, and Tyler Gamble in Alameda County Superior Court in Oakland, California. Taylor COO James Minard submitted a declaration in that litigation stating that Taylor has never possessed a Kytch device. References to internal emails and records were produced in discovery and are part of the public record.

24.     McDonald's and Taylor knew that their claims were false because Tyler Gamble—their primary source for intelligence about Kytch—told them so.  In the days before McDonald's and Taylor's false and deceptive ads were published, Gamble sought safety information from Kytch's founder, Jeremy O'Sullivan, and unbeknownst to Kytch, forwarded O'Sullivan's explanation for why any safety concerns were baseless:

> There are a number of layers of protection.  First, the machine should be powered off and unplugged before any work is started.  This is a standard safety for any equipment.  Second, there is a sensor on the freezer door that when the freezer door is removed prevents the motor from turning on. Third, we do have a mechanism in place that disables any automation when a user takes control of the front panel by pressing any buttons.  Also the product has been tested and certified for safety to UL standards by Intertek labs.

25.     McDonald's and Taylor received and understood these facts, but intentionally and recklessly disregarded them and falsely accused Kytch of being prone to cause "serious human injury."  McDonald's and Taylor published these false claims to all of Kytch's current customers and many of its potential customers, including to all McDonald's operators in North America (and to Coca-Cola and Burger King).  At the same time, McDonald's and Taylor announced that they would be launching their competing Open Kitchen device in Q1 2021 despite knowing all along they could never meet this deadline.  The purpose: to convince McDonald's restaurant owners to cancel their contracts with Kytch and thwart Kytch's forward momentum in the market giving McDonald's and Taylor more time to develop their competing Open Kitchen system.

26.     Indeed, a full eight months before McDonald's and Taylor's false ads, McDonald's insiders informed Kytch that McDonald's and Taylor would fabricate safety concerns to destroy Kytch's business: "If they don't want [Kytch] in the market, they're going to throw that [safety] stuff at you [to throw you] under the bus.  And keep putting that at you until you go away eventually."

27.    Those words were prescient.

28.    McDonald's and Taylor's advertisements fail to provide substantive details regarding Kytch's supposed operational safety risks or what "potential equipment reliability issues" the KSD causes—because these are complete fabrications.    Rather, ***Taylor*** has intentionally created "equipment reliability issues" for years, and its repair and maintenance business has earned hundreds of millions of dollars in fees for repairs that Taylor itself caused.

29.    To date, McDonald's and Taylor still have not released Open Kitchen.  They claim in court filings that development is "nearly complete."  But this development was only possible because McDonald's and Taylor improperly obtained Kytch's confidential information.  This, in combination with the false advertising attacking the safety of the Kytch device, allowed McDonald's and Taylor to gain a head start to launch Open Kitchen using proprietary insights that came from years of Kytch's costly product development.

30.    The damage to Kytch was instant and monumental.  Customers contacted Kytch in the days following the ads and canceled their subscriptions because of McDonald's false assertions that Kytch was unsafe and prone to cause serious human injury.  Kytch had been barreling towards a $50 million valuation in 2020 as it quickly expanded to fast-food restaurants throughout the country—and its valuation in the following year was projected to be exponentially more.

31.    That all changed after the false ads, and Kytch was soon unable to court investors to help fund its exponential growth trajectory.  Thus, Taylor's unlawful conduct had dire financial consequences for Kytch, its founders, investors, and its employees.

32.    Kytch brings this action to set the record straight, to vindicate the company's rights under civil law, to curb Taylor's anti-competitive conduct, to recover compensatory and punitive

damages, to protect the consuming public from false and misleading advertisements, and to finally fix the broken soft-serve machines.

## PARTIES

### *Kytch's Background.*

33.     Plaintiff Kytch, Inc. is a Delaware corporation.  Kytch considered the Kytch Solution and aspects of the KSP to be confidential that it would only disclose under a confidentiality agreement.  Taylor had actual knowledge of these facts and it reviewed Kytch's confidentiality terms in the spring of 2020.

34.     Kytch's data-driven product testing ultimately yielded next-generation IoT technology that cemented the company's status as a leader in the industry.

35.     Kytch launched its flagship device, the Kytch Solution, in Spring 2019 as part of a confidential product trial to limited fast-food restaurants.  Kytch spent years developing a trade secret man-in-the-middle technology (known as the KSD), to unlock Taylor's cryptic soft-serve machines.  Kytch also designed an online system, the KSP, for its customers to manage and monitor their machines.[3]  The KSP is equipped with a user-friendly interface to simplify the confusing Taylor machines.

36.     Kytch uncovered a repair racket whereby Taylor designed flawed code that ***caused the machines to malfunction.***  One of Taylor's service partners described this arrangement as a "money trap," and further explained that Taylor's "service department will reap the benefits of [the] steady stream of repair bills" to keep the machines up-and-running.

37.     Kytch originally agreed to provide its confidential technologies and user interface to trial participants under strict non-disclosure and non-use agreements (the "Kytch Trial

---

[3] The KSD and the KSP are referred to collectively as the "Kytch Solution."

Agreement" and "Terms of Service").  The Kytch Trial was an overnight sensation, and media outlets reported on the innovative technology that promised to reduce the machines' downtime and to consistently deliver more frozen treats to McDonald's customers.

38.    As the Kytch Trial expanded in 2020, it became the largest independent IoT/connectivity software vendor for the shake machine in the McDonald's system.  By all appearances, the KSD modernized the outdated soft-serve machines that had frustrated customers for years.

39.    Through years of development, Kytch has built expertise, proprietary insights, diagnostic tools, and notification systems for the growing "smart kitchen" marketplace.

40.    Kytch's founders, Jeremy O'Sullivan and Melissa Nelson have worked with Taylor's executive team for years.  Documents produced in discovery demonstrate that the company knew that Kytch was protecting its proprietary information through non-disclosure agreements and industry-leading security measures described in more detail below.

41.    McDonald's and Taylor's misconduct injured Kytch.  Kytch suffered significant loss of revenues and profits because of McDonald's actions, which caused, among other things, a decline in Kytch's sales.  Likewise, Kytch will suffer significant loss of revenues and profits in the future due to McDonald's and Taylor's misconduct.  And Kytch lost valuable intellectual property and suffered reputational damage because of these unlawful acts.

### Background of Taylor and Its Co-Conspirators.

42.    Defendant Taylor Commercial Foodservice, LLC DBA Taylor Company is incorporated in Delaware.  Taylor manufacturers soft-serve machines for McDonald's and other commercial kitchens.  Taylor's CEO Jeremy Dobrowolski, its COO James Minard, and its Senior Business Manager for McDonald's Scott Nicholas directed, supervised, oversaw, and participated

in the misappropriation of Kytch's confidential information and the unlawful competition alleged herein.

43.     Delaware-based McDonald's Corporation is one of the largest foodservice companies in the world and owns approximately $30 billion in real estate.  McDonald's Director of Global Equipment Development, Mike Zagorski, and its Director of Global Strategic Sourcing, John Sulit, directed, supervised, and oversaw the campaign of unfair competition campaign alleged herein.

44.     TFG is Taylor's certified repair partner and distributor.  TFG describes itself as utilizing "analytical advances to ensure speed of service, reduction of equipment downtime and labor savings."  TFG, through its principal Blaine Martin, its repair technician Ben Rhodes, and others, misappropriated Kytch's confidential information and attempted to reverse engineer the KSD.

45.     Jonathan "Tyler" Gamble operates ten McDonald's restaurants.  Gamble is an independent franchise owner, and at all times relevant he served as the Equipment Team Lead for McDonald's National Supplier Leadership Council.[4]  Gamble worked closely with other influential McDonald's franchise owners to misappropriate Kytch's confidential information.

46.     Gamble enrolled in the Kytch Trial after executing the binding Kytch Trial Agreement and after representing that he and his company would not use Kytch's information to "build or support, and/or assist a third party in building or supporting products or services competitive" to Kytch.  (Kytch Terms of Service, § 1(g).)

---

[4] This complaint refers to the National Supply Leadership Counsel as the "NSLC," and the NSLC's Equipment Team as the "McDonald's Equipment Team."

47.     The Kytch Trial Agreement incorporates Kytch's binding Terms of Service, and those provisions, among other things, prohibit Gamble and the other Kytch Trial participants from "providing unauthorized access or exceeding authorized access to [Kytch's] products, services or any account."  (Kytch Terms of Service, § "Notice.")[5]

48.     Kytch is informed and believes that Taylor, in committing the acts or omissions alleged in this Complaint, conspired with, aided and abetted, or otherwise acted in concert with McDonald's, TFG, PHD, Gamble, and other Kytch Trial participants.

## JURISDICTION & VENUE

49.     The Court has subject matter jurisdiction over the Lanham Act claims pursuant to 15 U.S.C. § 1121.

50.     This Court has general personal jurisdiction over Taylor, which is incorporated under the laws of Delaware.

51.     Venue in this Court is proper under 28 U.S.C. § 1391(b)(1) because Defendant Taylor resides in Delaware, its state of incorporation.

## FACTUAL ALLEGATIONS

### McDonald's Ice Cream Machines Are Notorious for Frequently Breaking Down.

52.     Most McDonald's restaurants are equipped with Taylor Model C602 soft-serve machines.  This model is not available for purchase by the public.

---

[5] Copies of the Kytch Trial Agreement and the Terms of Service that bind Gamble and the other Kytch Trial participants are attached as **Exhibit 1.**



(C602 Soft-Serve Machine)

53.    Although Taylor occupies a substantial share of the soft-serve machine market—a large segment of franchised restaurants, and almost 100% within McDonald's restaurants—its machines are "notorious for constantly breaking down."  The machines' reputation for breaking led *The Wall Street Journal* to explain in a recent story that "[t]he interruption in ice cream, milkshake, and McFlurry service is so widespread that it has spawned an avalanche of social media complaints in the U.S. and abroad—and conspiracy theories."[6]

54.    In response to the criticism, McDonald's and Taylor have tried to deflect responsibility despite widespread complaints across the world.  Taylor's COO James Minard has referred to news coverage about the machine malfunctions as "Fake news," in what appears to be

---

[6] Julie Jargon, *Why Is The McFlurry Machine Down Again*, The Wall Street Journal, (Jan. 19, 2017), https://www.wsj.com/articles/six-horrifying-words-the-mcflurry-machine-is-down-again-1484840520.

an attempt to discredit *The Wall Street Journal's* headline bearing the question, "Why is the McFlurry Machine Down Again?"



55.     McDonald's has publicly claimed that it is "committed to doing better" and improving the machines, but no meaningful progress has been made.

56.     The ridicule McDonald's has received from the media because of the defective ice cream machines is more serious than the whimsical headlines suggest because some of the problems have alarming public health implications for consumers.

57.     A recent study conducted by *Dateline*, for example, assessed the cleanliness of top fast-food chains, including McDonald's.  According to that NBC News report, "[m]ore than 120 people were sickened after eating ice cream at their local McDonald's."[7]



---

[7] Jack Cloherty, *Dirty Dining: The investigation NBC News producer Jack Cloherty shares the story behind Dateline's cleanliness survey of top fast food chains*, NBC News (Mar. 10, 2005), https://www.nbcnews.com/id/wbna7149927.

58.     That is not surprising.  Proprietary data Kytch has developed about McDonald's ice cream machines from an analysis of its customer data revealed that many of the Taylor machines, including the C602, have a manual switch allowing users to bypass mandatory pasteurization and brush cleanings.  A significant portion of the machines in the Kytch Trial operated with this bypass, in violation of public health agency and food safety regulations.  Indeed, for years, Taylor's service manuals for the C602 contained specific procedures to bypass the regulations.

59.     Despite these issues, and in complete disregard of state and county inspection reports confirming that the machines breach safety protocols, McDonald's pattern of denialism continued for years.

60.     Separate from the serious public health concerns created by the machines, there are also significant anti-competitive concerns raised by McDonald's and Taylor's conduct in requiring Taylor soft-serve machine owners to have their machines serviced and repaired only by Taylor-certified technicians.

61.     On September 1, 2021, *The Wall Street Journal* reported that the Federal Trade Commission had launched an investigation into this issue and was contacting McDonald's franchise owners seeking information about the broken ice-cream machines.[8]



---

[8] Heather Haddon, *McDonald's McFlurry Machine Is Broken (Again).  Now the FTC is on It, the frequently malfunctioning equipment leads to a lawsuit and gets the federal antitrust agency involved*, The Wall Street Journal (Sept. 1, 2021), https://www.wsj.com/articles/mcdonalds-mcflurry-machine-is-broken-again-now-the-ftc-is-on-it-11630522266.

62.     These reports continued, and the following month *The Daily Show with Trevor Noah* dedicated a segment to exploring Taylor's broken soft-serve machines and highlighting the right-to-repair movement.[9]  Noah described reports that Taylor has "deliberately built-in flaws in order to profit on repairs when [Taylor's] technicians have to fix the machines."



63.     This coverage caught investors' attention.  During a November 9, 2021 earnings call for Middleby (Taylor's parent company), an industry analyst asked Middleby CEO Timothy Fitzgerald to address the broken machines.  The analyst referenced the myriad "reliability issues" reported by the media and explained "there's an awful lot of articles and things around the Taylor ice cream machines."

64.     Fitzgerald replied by admitting that the broken machines "drive[] a lot of revenue" to the company.  He also said that Taylor and Middleby are "***doing everything we can to make sure that our piece of equipment, which is highly core to our customers, really has the best***

---

[9] The Daily Show with Trevor Noah, *The Right to Repair Movement – If You Don't Know, Now You Know* (aired Oct. 7, 2021), https://www.youtube.com/watch?v=UA7hZDfQDws.

***technology in there.***"  He went on to explain that Middleby is "doing a lot using technology actually with IoT and kind of our next-generation piece of equipment."

65.    Fitzgerald's remarks made no mention of McDonald's and Taylor's sustained efforts to obtain Kytch's technology through improper means.

### *Kytch's Product Testing Reveals that Defects Were Built into the C602 Machines.*

66.    Kytch's innovation relies on a data-driven, iterative process that harnesses the collection and analysis of large amounts of data.

67.    Before launching Kytch, in 2011 Kytch founders Jeremy O'Sullivan and Melissa Nelson started a predecessor company, Frobot, Inc.  Frobot is a fully robotic frozen yogurt dispenser that produces made-to-order frozen confections.  Frobot is designed to interact with soft-serve machines made by Taylor.

68.    Through that venture, Frobot informed Taylor's leadership about its device that promised to augment the capabilities of the Taylor machines, including automation and increasing safety offerings.

69.    This innovation required years of product development and additional safety testing given that the process involves serving dairy products to the public.  Taylor's response to Frobot's prototype was positive, and years of—and significant capital devoted to—product development followed.

70.    Frobot had a small fleet of Taylor machines, and Nelson and O'Sullivan soon learned that the only way to keep the machines up and running was through frequent and expensive service visits.

71.    After only a few months of gathering data, it became clear that the Taylor soft-serve machines were not very robust, and the finicky software was constantly causing outages.

72.    Kytch was founded in 2018, and its original purpose was to develop a safety add-on to the automated soft-serve machines.  In contrast to Frobot's focus on automation capabilities, Kytch focused on data and software to optimize the soft-serve machines and reduce outages.

73.    The Kytch Solution officially launched in July 2019 before expanding to fast-food restaurants in the broader San Francisco area a short time later.

74.    Kytch soon learned that the C602 machines are designed to prohibit users from accessing the fulsome "Technician's Menu" that operates the machines.  The limited menu contains confusing messages that leave McDonald's franchisees frustrated and unable to operate the machine, causing them to "call the technician" for even minor problems.  One example of the cryptic error messages is below.



75.    Restaurant operators are unable to navigate the messages and notifications depicted on the control panel Taylor designed.  This lack of clarity has kept Taylor's customers dependent on Taylor-certified technicians (including TFG) to operate their soft-serve machines.

76.    Kytch's founders launched Kytch to demystify the machines and to automatically detect the appliances' frequent errors as they happen.

*Kytch's Innovative Technology and Confidential Information.*

77.     Kytch's technology consists of two parts: (1) the KSD, a small physical computer with software to understand the ice cream machine's internal communications between components and the Taylor interface and (2) the KSP, an online interface that receives messages from the KSD through the internet and presents customers a convenient user interface, friendlier than the one Taylor intended.

78.     The KSD is an easy-to-install device that can be bolted on the soft-serve machines. When mounted on the machine and connected to the KSP, Kytch's IoT technology and data retrieval processes enable restaurant operators to see exactly what is going on with their machines.

79.     Together, the KSD and KSP comprise the Kytch Solution.  The KSD and KSP also allow Kytch's Trial participants—subject to binding NDAs—to monitor and control their Taylor machines remotely, by logging into the password protected KSP.

80.     The KSP uses machine learning to identify which notifications and alerts to generate, as well as the timing and content of those alerts.  Kytch's intensive data-analytics and automated processes work in tandem to optimize machine performance.  Kytch developed these insights over years of reviewing and analyzing Taylor soft-serve machines across Kytch's system.

81.     Importantly, the KSP also allows customers to invite team members to manage and navigate the online interface.

82.     The data Kytch collects has enabled the company to perform market assessments to anticipate shifting demands, to develop pricing strategies, and decide when and where to launch products.  It also informs Kytch's investments in product development and new technologies.

83.     Indeed, based on Kytch's robust data retrieval and analytics capabilities, Kytch possessed considerably more data about Taylor soft-serve machines, performance histories, and performance optimization than Taylor itself.

***The Kytch Solution Is Safe and Certified by Intertek to Comply
with FCC Regulations and UL Standards.***

84.     Kytch's central mission is to improve the safety and reliability of soft-serve machines.  Kytch spent years and many hundreds of hours monitoring the soft-serve machines and creating a solution that incorporates Taylor's existing safeguards.

85.     The Taylor machine's marketing materials say that Taylor has "gone to extreme efforts to design" mechanisms to keep users safe.   The Kytch Solution complements and incorporates these safety efforts.

86.     One example is the magnetic lock system.  When the freezer door is removed, users can be exposed to moving parts of the soft-serve machine, such as the beater depicted below.



(Taylor Model C602 Beater)

87.     Rotating blades attached to the beaters scrape soft serve mix from the walls of the machine's cylinder as it freezes.  Taylor's magnetic interlock system is triggered whenever the freezer door has been opened or removed (and the beater is exposed).  This system disables the motor and prevents users from inadvertently engaging the beater or other moving parts within the machine while the door is open.  Removing the freezer door also automatically disables the buttons on the control panel to ensure that the motor is not turned on.

88.    Kytch operates within these critical safety functions, and Kytch cannot and does not override the magnetic interlock system or the disabled control panel.  Kytch also disables its automation features when users are cleaning the interior of the machine and when anyone presses the physical buttons on the control panel.

89.    On top of these safety features, the KSD cannot operate when machines are unplugged or turned off.  Taylor's operations manuals state that technicians must turn off and unplug the soft-serve machines before completing any maintenance or service repairs.[10]  These safety steps are standard in the industry.

90.    Far from endangering customers, Kytch made the C602 machines *safer* by allowing users to monitor their machines and by flagging when employees miss cleaning or heating cycles required by food safety regulations.  For example, Kytch discovered that many of the C602 machines have a jumper installed on the W2 pins on the rear of the machine.  This jumper disables necessary safety mechanisms related to mandatory pasteurization and heating cycles.  Taylor has been aware of this hazard for years, but it has taken no action to correct this defect.  This violates NSF International's food safety requirements and may endanger consumers.

91.    Kytch instructs customers how to avoid this dangerous condition.

92.    The data Kytch gathered demonstrates that the KSD actually *improves* the C602 and other Taylor machines by *increasing* uptime and preventing common errors before they occur.

93.    In addition to Kytch's in-house safety testing, Intertek—an independent lab designed to test and certify products to North American safety standards—has certified that Kytch's products comply with the same safety standards as Taylor's products.

---

[10] The manual states: "The main power supplies to the machine must be disconnected prior to performing any repairs."

94.     Manufacturers like Kytch that sell radio transmitters in the United States must have their products tested by FCC accredited labs and certified by the FCC for electromagnetic compatibility ("EMC") compliance. Radio devices like the KSD are subject to a series of FCC regulations, commonly referred to as "Part 15." 47 C.F.R. Part 15. To obtain certification for such devices, a company must submit a representative sample device to an independent testing facility that determines, among other things, whether the power output levels for the devices comply with FCC Part 15 regulations.

95.     That is precisely what Kytch did. In June 2019, Kytch contracted with Intertek to subject the KSD to rigorous safety testing at Intertek's laboratory. Intertek completed those tests and confirmed that the KSD complied with FCC regulations and that it did not present a safety hazard for end-users.

96.     Intertek issued a report explaining its findings. "Based on the results of our investigation we have concluded the [KSD] complies with the requirements of [FCC Part 15 Subpart B and Industry Canada ICES-003 Issues 6]." Intertek also confirmed that the KSD satisfies radiated emissions standards and that it "met the radiated disturbance" and "conducted disturbance" FCC requirements.[11]

97.     This EMC compliance testing was not the only safety testing Intertek completed. The KSD was also certified through Intertek's Extract-Transform-Load ("ETL") testing. ETL testing ensures that data is accurately loaded from the machines and transmitted to the Kytch device. ETL testing also verifies the data at various middle stages of the communications process between source and destination.

---

[11] Radiated emissions are unintentional energy that escape the equipment in the form of electric, magnetic, or electromagnetic fields. Conducted emissions are unintentional energy carried out of the equipment on the equipment's power cables or attached signal cables.

98.     Intertek completed additional testing including input tests, marking tests, temperature tests, and tests to classify electrical energy sources.  Kytch passed these tests with flying colors.  After this independent testing, Intertek concluded that the KSD "has been evaluated and found to comply with the applicable requirements" and standards developed by UL.  (UL is a corporation that promulgates and certifies compliance with safety standards for thousands of consumer and other products.)

99.     Through this testing, Intertek confirmed:

- The KSD "***does not pose a risk of shock hazard***" because its power source is "not accessible to an end user."

- "All uninsulated live parts in primary circuitry are [] housed within a[n] enclosure" and are "not accessible to end users."

- "All ferrous metal parts are protected against corrosion."

100.     These are just a few examples of Intertek's findings confirming that the KSD is safe.  Indeed, Intertek would not have certified the KSD if it determined that it presented a serious risk of human injury as McDonald's and Taylor later claimed.  Each KSD is marked with Intertek's certification explaining that it conforms with UL standards.

101.     Kytch displays this certification label prominently to notify users that it has passed rigorous—and time consuming—safety testing.  Thus, McDonald's and Taylor had actual knowledge that Kytch had passed safety tests.  Kytch has always prioritized product safety: not a single customer has ever reported an injury using the KSD or the KSP.

***NDAs and Other Security Measures Protect Kytch's Valuable Confidential Information.***

102.     Kytch has built expertise, proprietary insights, diagnostic tools, and notification systems for the growing "smart kitchen" marketplace.

103.    Because one of Kytch's key strategic advantages lies in its proprietary information, Kytch operated strict controls over access to the Kytch Solution and portions of the KSP.  Kytch required its customers to enter into a non-disclosure agreement to protect Kytch's confidential information.  The Kytch Trial Agreement (the "NDA") reflects the fundamental nature of Kytch's relationship with its customers.  The NDA encompasses both the Kytch Trial Agreement and the Terms of Service incorporated in that document.

104.    Kytch's customers sought out Kytch's data-driven approach to fixing the machines. Kytch, on the other hand, needed to make sure that one of its chief assets—its innovative hardware and software were protected from competitors.

105.    Kytch would never just give away its confidential information for free or so that third parties could use them for their benefit, much less to benefit Kytch's competitors in the IoT industry.  The NDA memorializes how Kytch and its customers came together around these competing interests: each customer was obligated and agreed to keep the information and devices Kytch provided confidential, and they could use it only in furtherance of the Kytch Trial.

106.    The NDA states that Kytch Trial participants and those who accepted the Terms of Service "may not and may not directly or indirectly cause, permit, or allow others to . . . make [Kytch's] Products or Services, including any Kytch programs or materials to which you are provided access, available *in any manner to any third party*."  Terms of Service §1(g).

107.    The NDA also prohibits "access[ing] or us[ing] [Kytch's] services in order to build or support, and/or assist a third party in building or supporting, Products or Services competitive to Kytch."  Likewise, Kytch Trial participants and users must not "disclose the results of the performance of [Kytch's] Products and Services without Kytch's prior written consent."  *Id.*

25

108.    Further, Kytch Trial participants "shall not, and shall not cause or permit others to . . . distribute or republish all or any part of [Kytch's] Products or otherwise access or use the Products in order to build or support, and/or assist a third party in building or supporting products or services competitive to any Kytch Products."   To avoid doubt, the NDA expressly forbids "display[ing] . . . or mak[ing] the Kytch Products available to (or use such Products for the benefit of) any third party."  Kytch Trial Agreement § D.

109.    Finally, the NDA limits use of Kytch's products to the Kytch Trial, and Kytch Trial participants and users must not utilize "the Products for any business other than" the Kytch Trial, and they cannot use the Products or disclose any of Kytch's confidential information "for any purpose other than [] evaluat[ing] the [Kytch] Solution" as part of the Kytch Trial.  Kytch Trial Agreement § J.

110.    With these contractual protections in place, Kytch gave customers access to a substantial amount of proprietary information and confidential documents.  Kytch also sent KSDs—each protected by the NDA—for use at McDonald's franchise locations for one purpose: to support and further the Kytch Trial.

111.    Kytch shared its confidential and proprietary hardware and software designs only with customers who executed the NDA.  As explained further below, Gamble and other trial participants betrayed Kytch and their contractual obligations when they used Kytch's own confidential information to compete against the company.  This has caused irreparable harm to Kytch.

112.    Kytch required that this information be protected with the NDA because this confidential information is at the heart of Kytch's business model and is what sets it apart from its competitors, specifically Taylor and TFG.

113.    Kytch's proprietary materials offer a roadmap for a strategy that has never been attempted in the soft-serve machine industry: using man-in-the-middle technology to communicate with the finicky machines and to stabilize volatile software, all while providing real-time notifications to customers.  This offering reduced the need for costly repairs paid to Taylor and its franchise distributors (including TFG).

114.    Kytch introduced the industry to the revolutionary notion that these industrial machines should be controlled by the restaurant owners and assisted intelligence, and that by demystifying the complicated machines and reducing the need for costly service technicians, Kytch could save its customers millions of dollars in recaptured revenue and reduced overhead. Kytch's cohesive strategy promises enormous returns, far more than current outputs from Taylor's competing technology.

115.    Successfully executing this strategy would require a combination of innovative thinking, expertise in the fast-food industry, and sensitivity to customers' needs, together with a willingness to invest significant time and resources into creating the analyses and conducting the product testing to turn the strategy into a thriving business.

### Taylor's Early Efforts to Intercept the Kytch Solution and to Access Kytch's Confidential Information.

116.    Protected by binding NDAs, Kytch released the Kytch Solution in April 2019 through the confidential Kytch Trial.  Around the same time Taylor's parent company Middleby purchased an IoT startup PHD.

117.    The PHD acquisition demonstrated Middleby's "increased interest and investment in software and services related to its core equipment business."[12]  Middleby intended to leverage PHD's IoT expertise to develop a solution to Taylor's broken soft-serve machines.

118.    However, the flawed hardware and software on Taylor's machines blocked PHD's attempts to develop a workable IoT solution.  So instead of developing its own products, Taylor started trying to obtain the KSD *__less than three weeks__* after Middleby bought PHD.

119.    Taylor's attempts to secure a KSD failed because Kytch's security protocols flagged the attempted espionage.

120.    During routine monitoring of its website (www.kytch.com) in April 2019, Kytch discovered that Taylor representatives were trawling Kytch's home page, including its Terms of Service.  This and other communications notified Taylor that Kytch's operations—including its proprietary information, and computers—were based in Fremont, California.

121.    After scraping information from Kytch's website, Taylor attempted to purchase a KSD.  On April 23, 2019, Taylor VP of Quality and Customer Service Dan Domberg instructed Taylor Service Technology Manager Heather Jordan to order a KSD through www.kytch.com. Kytch flagged, and then canceled, Ms. Jordan's order after matching her shipping address to Taylor's headquarters.

122.    When Taylor learned Kytch blocked its order, Taylor's VP of Quality and Customer Service told Heather Jordan that Taylor "should've ordered [the Kytch Solution] in stealth mode," adding a smiley face emoji for emphasis.

---

[12] Donovan Jones, *Middleby Acquires Powerhouse Dynamics for Equipment IOT*, Seeking Alpha (Apr. 08, 20210), https://seekingalpha.com/article/4253430-middleby-acquires-powerhouse-dynamics-for-equipment-iot.



123.    This marked the beginning of Taylor's attempts to secure a KSD. A short time later Taylor COO James Minard admitted that Kytch's technology was more advanced than Taylor's and PHD's. In a May 16, 2019 email, Minard directed Taylor's Controls Manager Joseph Beard to buy a Kytch Solution device because it "[s]eems we might be missing something in our approach to our connected equipment." Taylor's CEO Jeremy Dobrowolski is copied on the message.



124.    Taylor followed through on Minard's instruction, this time opting to proceed against Kytch using "stealth mode." Taylor ordered KSDs through its outside counsel at Brinks Gilson to try to circumvent Kytch's security protocols. But Kytch identified the prospective buyer as Taylor's legal counsel and blocked the order.

125.    Taylor doubled down on its efforts, and its counsel hired at least two private investigators using assumed names to try to avoid raising suspicion. Just like the previous orders, Kytch's security precautions flagged and thwarted these attempts from Taylor to obtain KSDs.

Taylor's mission to covertly retrieve Kytch Solutions—and the attention Kytch received from Taylor's c-suite—is further evidence that Kytch's technology has substantial economic value.

126.    In May 2019 Taylor's CEO Jeremy Dobrowolski wrote in an email that Taylor was "continu[ing] to pursue the acquisition of one of [Kytch's] devises [*sic*]." At the same time, Taylor and PHD were trying, albeit unsuccessfully, to invent a competing solution for McDonald's.

127.    Unable to compete with Kytch, Taylor changed tack in June 2019 and directed its outside counsel to send Kytch a cease-and-desist-letter.

128.    After spending the previous six months trying to secretly obtain a KSD, Minard emailed and called Kytch in October 2019 to discuss a potential licensing arrangement. Minard told Kytch that Taylor was interested in purchasing rights to some of Kytch's technology.

129.    These discussions ended, however, after Kytch informed Taylor that it would not share any proprietary information about the KSD or KSP unless, and until, Taylor signed an NDA.

130.    According to Minard, by the end of 2019—***less than four months after Middleby acquired PHD—***"Taylor decided to stop further development on its own IoT platform" because Taylor lacked the "resources and expertise" necessary to "devote to the development of IoT technology."

### The Kytch Trial Expands to McDonald's in Fall 2019 as McDonald's Rejects Taylor and PHD's Open Kitchen.

131.    While McDonald's and Taylor were trying to secure a KSD, demand for Kytch continued to grow throughout the spring and summer of 2019 as more restaurant operators adopted the KSD and KSP. The earliest participants in the Kytch Trial were based in California. But by fall, Kytch spread to McDonald's restaurants across the United States.

132.    Just as Kytch was gaining momentum with independent McDonald's operators, Taylor and PHD's Open Kitchen efforts were failing. McDonald's rejected Open Kitchen as

premature to place into the McDonald's system, and Taylor and PHD were forced to sideline their IoT efforts.

133.    In October 2019 Kytch was featured at the National Owners Association conference in Dallas, Texas, where the Kytch Solution was showcased to the largest association of independent U.S. McDonald's franchise operators.

134.    These independent franchisees control and operate several trade organizations, including the NSLC.  The NSLC collaborates with McDonald's supply chain leadership and its "Equipment Team"—led by Tyler Gamble—provides valuable insight to McDonald's concerning product innovations to potentially integrate into McDonald's system.

135.    One of the Equipment Team's key focus areas is to find solutions for McDonald's soft-serve machine problem through the "McFlurry Task Force," also known as the "Shake Machine Reliability Project."

136.    McDonald's and Taylor leveraged the NSLC and the Equipment Team to access Kytch's confidential information.  Specifically, McDonald's and Taylor coordinated with NSLC Equipment Team Lead Tyler Gamble, NSLC Chair and Vice Chair Jon Kelley and Eric Wilson, NSLC Competitive Advantage Team Lead Larry Miller, and Logistics Team Lead Laura Bucar.

***February 2020: After Reading News Reports of Kytch's Success, McDonald's and Taylor Infiltrate Kytch's Product Trial to Misappropriate Confidential Information.***

137.    By 2020, McDonald's franchise operators enrolled in the Kytch Trial to test Kytch Solution at restaurants in Arkansas, California, Connecticut, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Montana, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Washington, and Wisconsin.

138.    As a result of this massive expansion, Kytch became the largest independent IOT/connectivity software vendor for Taylor's shake machines in the McDonald's system.  By all appearances, the Kytch Solution was a viable remedy to many of the problems that had troubled Taylor soft-serve machines and frustrated customers for years.

139.    In February 2020, news outlets reported on Kytch's success.

## McDonald's and Burger King franchisees are raving about a new device that can update their notoriously broken soft-serve machines

Shoshy Ciment  Feb 11, 2020, 10:21 AM

## LICK OF TIME McDonald's ice cream machines may never break down on you again – thanks to new machine

Feb 12 2020, 19:42 ET | Updated: Feb 12 2020, 23:07 ET

New device may prevent McDonald's ice cream machines from breaking

By WWAY News – February 12, 2020 11:28 AM

## A New Device Promises to Keep McFlurry Machines Up and Running

Already popping up in some restaurants, Kytch is hoping to end the scourge of broken down McDonald's soft-serve machines.

By Mike Pomranz    Updated February 13, 2020

140.    A February 11, 2020 *Business Insider* article discussing Kytch's innovative product was an inflection point.  The article—titled "McDonald's and Burger King franchisees are raving about a new device that can update their notoriously broken soft-serve machines"—highlights many of the problems with the soft-serve machines at McDonald's.[13]  It also describes Kytch as a

---

[13] *See* footnote 5, *supra*.

viable solution to this problem because the new technology "corrects unnecessary malfunctions" that cause downtime.

141.    On February 12, 2020, McDonald's mentioned Kytch in its "Daily Briefing." The Daily Briefing describes some of the news coverage of Kytch and explains that McDonald's competitors—specifically Burger King, Tim Horton's, and Popeyes—are "'doubling down' on [their] modernization strategy."

142.    Customers contacted McDonald's that same day asking how to sign up for Kytch. This created a problem for McDonald's and Taylor because Kytch was highlighting the problem with the broken soft-serve machines, and Taylor and PHD lacked the technology to compete with their own IoT solution.

143.    Taylor and PHD exchanged emails describing their plan to take Kytch's confidential information. One such email says that Taylor and PHD were trying to develop a "Kytch Replacement" and the central question for their competing product was: "How does it compare with Kitch's [*sic*] solution?"

144.    On February 12, 2020, Taylor's CEO, Jeremy Dobrowolski, and its COO, James Minard, scheduled a one-hour teleconference for the following day to discuss "Kytch, and Options for Data Collection for McDonald's Equipment." Senior leadership from McDonald's and Middleby were invited to the call, along with two independent McDonald's franchise operators, Gamble (McDonald's Equipment Team Lead) and Eric Wilson (who previously served the same position).

145.    By this point, Taylor—working with McDonald's—had been trying to circumvent Kytch's security protocols to obtain KSDs for ten months.

146.    McDonald's and Taylor scheduled the February 13, 2020 call to direct McDonald's operators—including Gamble—to infiltrate the Kytch Trial and to obtain Kytch's proprietary insights and confidential information.

147.    Gamble and others would then share these insights and Kytch confidential information with McDonald's, Taylor, and PHD so they could copy Kytch's technology.

148.    Before the meeting, Taylor sent a memo to McDonald's, Gamble, and Wilson providing "a summary of the Kytch device."

149.    The presentation contains pictures of KSDs from a South Carolina McDonald's franchise operator.  Taylor admits in the document that it "***attempted to obtain a Kytch device through multiple channels and has been unsuccessful in doing so,***" and explained that Taylor was "***continuing their efforts to obtain a unit from Kytch.***"

150.    McDonald's Director of Global Equipment Mike Zagorski emailed Tyler Gamble and Eric Wilson right after the meeting to thank them for agreeing to test Taylor's competing product.  McDonald's also stated that it would "arrang[e] options" with Gamble "on how we should approach getting the device" from Kytch.

151.    Tyler Gamble acted quickly.  On the morning of February 14, less than one day after the February 13 meeting, Gamble emailed Kytch's founders to enroll in the Kytch Trial.[14]

152.    Gamble spoke with Kytch later that day, at McDonald's and Taylor's urging. Gamble told Kytch's founder that he was eager to obtain the Kytch Solution.  He also offered to serve as the liaison between Kytch and the fast-food giant, promising to solidify Kytch's relationship with McDonald's.

---

[14] Taylor's internal emails confirm that it knew that Kytch was blocking its attempts to access the KSD: "When we tried to obtain a unit from Kytch to evaluate how it works, they've not been willing to provide us one."

34



**Tyler Gamble**
NSLC Equipment Team Lead

**Eric Wilson**
NSLC Vice Chair

153.    Unbeknownst to Kytch, after Tyler Gamble contacted Kytch, but before he signed the Kytch Trial Agreement, Taylor COO James Minard asked McDonald's leadership to "[p]lease let me know when you and your team have secured access to a Kytch unit and I will have my team available for a complete review."

154.    On March 12, 2020—approximately one month after he first emailed Kytch—Gamble called Kytch's founder Jeremy O'Sullivan.  During the call, Gamble said that he would leverage his position with McDonald's Equipment Team to encourage McDonald's to adopt Kytch's technology.  He also said McDonald's and Taylor were offended that Kytch did not approach them directly, and that Taylor would manufacture safety concerns to make Kytch "go away" and leave the marketplace.

155.    At the same time, Taylor and PHD continued to struggle to develop their competing product for McDonald's.  Taylor tasked its "Technology Manager" Heather Jordan to develop the user interface for "Open Kitchen."

156.    On March 13, 2020, Jordan complained that PHD lacked the capacity to compete with Kytch.  Taylor was trying to develop Open Kitchen, but PHD was unable to pull data from Taylor's soft-serve machines in real-time.  Thus, PHD could not identify when machines

experienced errors, when buttons were pressed, or when functions were engaged to display on a user-friendly interface:

> I think we need to have a heart-to-heart conversation with [PHD]. I'm concerned they don't have the resources to support us. I sent them U[ser] I[nterface] feedback a week ago and have not been able to confirm when the changes will be made. I know they're probably in the same situation we are, but we need to understand their capacities before we can make a decision to move forward with them.

### *Gamble Shares Kytch's Confidential Information with McDonald's, TFG, and Taylor.*

157.    On March 19, 2020, Kytch and Gamble entered a valid and binding contract whereby, in exchange for Gamble's covenants of nondisclosure and secrecy, Kytch agreed to provide its confidential information—including the Kytch Solution Device and Kytch Solution Platform—to Gamble to use for the sole purpose of furthering the Kytch Trial.

158.    When he signed the Kytch Trial Agreement, Gamble agreed that he would not—nor permit others to—"access or use the Solution in order to build or support, and/or assist a third party in building or supporting, products or services competitive to any Kytch Solution." (Kytch Trial Agreement § N.) Kytch's Terms of Service also contain strict nondisclosure and confidentiality obligations in Section 1(g).

159.    Despite these covenants, Gamble enrolled in the Kytch Trial to misappropriate Kytch's confidential information to benefit McDonald's and Taylor. Gamble shared Kytch's confidential information with McDonald's, TFG, and Taylor. Specifically, Gamble provided a KSD to TFG, and he even gave TFG his login credentials after sending screenshots of the KSP and forwarding notifications from Kytch. He also forwarded notifications from the KSP to Mike Zagorski.

160.    On May 19, 2020, Gamble text messaged TFG principal Blaine Martin and TFG technician Ben Rhodes (1) copies of notifications he received from the KSP and (2) a screenshot

of the password protected portion of the KSP. Gamble's text messages show that Gamble repeatedly forwarded KSP notifications or screenshots to Martin, Rhodes, and other unauthorized third parties.

161. TFG principal Blaine Martin and TFG employee Ben Rhodes unlawfully accessed the Kytch Solution Platform after trafficking Tyler Gamble's passwords despite reading and accepting the Kytch Terms of Service.

162. On June 3, 2020, Blaine Martin asked Tyler Gamble if TFG could "access" the KSP "to see the data it provides."



> RE: Kytch Health Alert: Stonebrook 1
>
> Blaine Martin <bmartin@tfgroupllc.com>
> Thu 6/4/2020 12:55 PM
> To: Gamble Tyler (US Partners) <tyler.gamble@partners.mcd.com>
> Would it be possible for us to have access to the system to see the data it provides
>
> Thanks,
> Blaine Martin
> TFG Companies
> Louisiana – Mississippi – Tennessee – Arkansas
> 504-415-2795
> bmartin@tfgroupllc.com

163. Gamble agreed. Text messages with Gamble and TFG demonstrate that Rhodes "logged in" to the KSP "with Blaine [Martin]'s credentials." In another text exchange with Rhodes, Gamble admits that he gave TFG principal Blaine Martin "a login to the [K]ytch device." (This "login" references the KSP.) Later that day Taylor started receiving notifications that the KSP sent to Gamble's account.

164. A short time after Gamble provided a KSD to TFG, Gamble invited someone named "Matt," using the telephone number for Blaine Martin to access the KSP. Martin used the registered name "Matt" as an alias to try to hide the fact that he was accessing the KSP without permission.

165. This account, tied to TFG, obtained access to Kytch's confidential information through the KSD and KSP. It would have taken McDonald's and Taylor years, millions of dollars, and a vast trial program to obtain this confidential customer data.

166. Kytch has forensically confirmed that the fake account associated with TFG was used to access the Kytch Solution Platform on multiple occasions.

167. There is also other significant forensic evidence that TFG accessed Kytch's confidential technology. The KSD Gamble provided to TFG was disconnected from the internet beginning in June of 2020 until February 2021. However, its SD card was 90% full when it was finally re-connected to the internet. The device log indicates that someone at TFG had been accessing the KSD, and that the device was powered on and used for weeks after going offline.

168. *Two days* after Gamble gave TFG access to the KSP, TFG sent a screenshot of the password-protected portions of the KSP to Taylor's Technology Manager Heather Jordan. Martin wrote: "[t]his is a picture of the Kytch screen. Wasn't sure if anyone ever shared what it looked like with you."

169. Heather Jordan led the development of Open Kitchen, specifically the user interface experience.

### *Throughout 2020, Gamble Continues to Share Kytch's Confidential Information with McDonald's and Taylor.*

170. Gamble continued to leak Kytch's confidential information to McDonald's and Taylor in Summer 2020. McDonald's and Taylor pressured Gamble and other Kytch Trial participants to violate their binding NDAs by sharing Kytch's proprietary insights and helping them develop Open Kitchen.

171. Gamble has admitted that Scott Nicholas, Taylor's Business Manager for McDonald's, "was asking franchisees" enrolled in the Kytch Trial "about the relative advantages" between Kytch's product and Open Kitchen.

172. Likewise, Gamble has admitted during litigation that he was talking with McDonald's representatives about the confidential Kytch Trial throughout 2020.

173. In June 2020, Tyler Gamble sent text messages to McDonald's Director of Global Equipment Development Mike Zagorski about the Kytch Solution device. Zagorski followed-up with Gamble via email, and asked Gamble to meet with Taylor's leadership—including Taylor's CEO and COO—to "catch up [] and understand what [he's] learned, like[s], dislike[s], etc. so far about [his] experience" with Kytch.

> **From:** Zagorski Mike <Mike.Zagorski@us.mcd.com>
> **Sent:** Thursday, June 18, 2020 12:54 PM
> **To:** Zagorski Mike; Gamble Tyler (US Partners); Dobrowolski, Jeremy; Minard, Jim; Nicholas, Scott
> **Subject:** Kytch/Shake Machine Connectivity
> **When:** Tuesday, June 23, 2020 10:00 AM-10:30 AM (UTC-06:00) Central Time (US & Canada).
> **Where:** WebEx
>
> Tyler –
>
> I had a call with the Taylor team this morning about multiple topics, and mentioned your text about the Kytch device. We'd love to take a few minutes to catch up with you and understand what you've learned, like, dislike, etc. so far about your experience.
>
> Let me know if this time doesn't work for anyone and we can reschedule. Thanks!

174. The following people were invited to join Tyler Gamble on that June 23, 2020 call: Jeremy Dobrowolski (Taylor's CEO), James Minard (Taylor's COO), Scott Nicholas (Taylor's Senior Business Manager for McDonald's), Mike Zagorski (McDonald's Director of Global Equipment Development), and John Sulit (McDonald's Director of Global Strategic Sourcing).

175. Gamble disclosed Kytch's confidential information during the call, and he described "the overall satisfaction of the Kytch device as it compares to Taylor['s] competing device." Gamble also shared his reaction and thoughts concerning Kytch's technology, proprietary

information, and customer experience.  Taylor COO James Minard has admitted that Gamble "showed the Kytch platform" via screenshare so that McDonald's and Taylor representatives could access the password-protected portions of the KSP.

176.    Minard captured images of Gamble's screenshare reflecting password-protected portions of the KSP.  Minard screenshotted the portion of the KSP that controls one of the KSDs that Gamble was assigned as a Kytch Trial participant.

177.    Another one of Minard's screen captures shows the portion of the KSP where Kytch customers input a code to access their KSD and remotely control their Taylor soft-serve machines.

178.    A third screenshot Minard captured shows notifications the KSP displays including the machine's fault and lockout and heat cycle histories.

179.    Minard's screenshots also show that Gamble shared screens of Taylor's more limited online interface to compare it with the KSP.

180.    McDonald's Director of Global Sourcing thanked Gamble in an email for providing confidential information about Kytch: ***"In regards, to Kytch, we appreciate that you've been keeping us informed of your findings on this aftermarket technology that you had installed in your Taylor Shake Sundae machine."***

181.    McDonald's and Taylor tried to ramp up product development after receiving feedback from Gamble.  But instead of coming up with their own innovations, Taylor's COO James Minard emailed Taylor engineer Joseph Beard to ask him, "So how can we do the same thing Kytch is doing as far as sending commands from a remote interface[?]"

**From:** Minard, Jim
**Sent:** Wednesday, July 8, 2020 2:23 PM
**To:** Beard, Joseph
**Subject:** Remote Access
**Attachments:** Kytch Review Conference Call 6-23-2020.docx

So how can we do the same thing Kytch is doing as far as sending commands from a remote interface. Please see my report.....

Sincerely,

**James J. Minard | Chief Operations Officer**
**Taylor Company**

182.    In another email, dated July 15, 2020, Minard says to "[t]ake today's design" of the

Open Kitchen "[a]nd make it more 'user friendly' (Kytch Screenshot below)."



### *The Largest Group of Independent McDonald's Franchise Operators*
### *Endorses Kytch in October 2020.*

183.    Despite McDonald's and Taylor's sustained efforts to misappropriate Kytch's confidential information, Kytch continued to grow throughout 2020.  Kytch customers gave positive reviews, praising Kytch for reducing unnecessary service fees and for finally bringing clarity to Taylor's finicky machines.  Its customer retention rate exceeded 90%.

184.    Restaurant operators' interest in Kytch spread like wildfire, and by October 2020, hundreds of McDonald's restaurants across the country relied on Kytch to keep their soft-serve machines up and running.  Kytch—through the Kytch Trial—demonstrated that its technology was outpacing its peers in the competitive smart kitchen industry.

185.    On October 7, 2020, the NOA (the largest association of independent McDonald's owners) endorsed Kytch at its annual conference.

186.    The NOA endorsement brought more unwanted attention to the soft-serve machines at McDonald's.  *Business Insider* published a story the next week explaining that because of Kytch, "McDonald's franchisees are taking matters into their own hands to fix the chain's notoriously broken soft-serve machines."[15]

187.    The article also reported that McDonald's "soft-serve dilemma is not something that can be ignored any longer" because "a software company called Kytch has put out a device that corrects for machine error and helps machine users understand the details of the machine's behavior."

---

[15] Shoshy Ciment, "McDonald's franchisees are taking matters into their own hands to fix the chain's notoriously broken soft-serve machines," Business Insider (Oct. 16, 2020), https://www.businessinsider.com/mcdonalds-franchisees-will-tackle-soft-serve-machine-problems-alone-2020-10.

188.    McDonald's and Taylor acknowledged that they could not compete with Kytch because development of Open Kitchen had stalled.  McDonald's and Taylor had "been hung up with Technology team since June to work on [their] platform," and McDonald's leadership complained about the lack of progress, explaining "[t]hings need to go much faster."

189.    Less than a week after the *Business Insider* article was published, a software engineer launched McBroken.com, a website that compiles statistics reflecting the number of Taylor soft-serve machines that are out of commission at any one moment.



190.    Public backlash against McDonald's was swift.



*McDonald's and Taylor Launch a False Advertising Campaign to*
*Unlawfully Compete Against Kytch.*

191.    Shortly after the NOA conference, Kytch quickly gained market share as it spread to hundreds of McDonald's locations throughout the country. This sent McDonald's and Taylor into crisis because Open Kitchen was nowhere near ready to launch but McDonald's and Taylor were desperate to drive Kytch from the marketplace.

192.    They knew they had to create a stall tactic to interrupt Kytch's rapid growth and customer acquisition trajectories.

193.    On October 16, 2020, Gerard Giustino–Chief Customer Officer at Middleby–sent an email to Jeremy Dobrowolski (CEO at Taylor), James Minard (COO at Taylor), and Scott Nicholas (Taylor's Senior Business Manager for McDonald's) acknowledging that the Kytch Solution works: "Many operators who are testing the solution feel that the Kytch solution actually eases operations and helps to reduce complexities of the machine."

194.    The email continues, "Mike [Zagorski] (McDonald's Director of Global Equipment Development) mentioned that without an alternate option [] to consider" McDonald's would be

forced to go with Kytch. Mike Zagorski explained, "If we don't have a solution to offer, we have no options."

195.    Three days after this email, Gamble text messaged Jeremy O'Sullivan and asked him if there was "a way to ensure that no one using the Kytch device remotely accesses the machine while a technician may be working on it? This is a big concern with M[cDonald's ]HQ for safety reasons."

196.    As a preliminary matter, McDonald's and Taylor did not have "a big concern . . . for safety reasons." Indeed, Gamble, himself, had warned Kytch six months earlier that McDonald's and Taylor would fabricate safety concerns to disparage the Kytch Solution and disrupt Kytch's business. Moreover, McDonald's and Taylor knew the claims were inherently improbable because of Kytch's impeccable safety record.

197.    Nonetheless, O'Sullivan responded and explained why the concern because of "safety reasons" was baseless:



198.    Jeremy O'Sullivan explained these facts to McDonald's Equipment Team Leader Tyler Gamble less than two weeks before McDonald's and Taylor's false advertisement.  This, alone, should have resolved any safety concerns about Kytch somehow causing serious human injury.

199.    But McDonald's and Taylor intentionally disregarded these facts to pursue their preconceived narrative disparaging Kytch's products.

200.    Indeed, McDonald's and Taylor already knew that Intertek had certified the Kytch Solution; Intertek's seal of approval is displayed prominently on the KSDs.

201.    Several independent McDonald's restaurant operators contacted Gamble, McDonald's, and Taylor to try to sign up for the Kytch Trial, and they expected McDonald's to approve the Kytch Solution and incorporate it into the McDonald's system.

202.    But Gamble explained that Kytch "will likely never be approved" because of "[b]ad blood between [Kytch] and Taylor."  Gamble acknowledged that Kytch had the superior product but he told operators to be patient because he was "getting very close to a version of the same type technology by powerhouse dynamics, a division of Middleby.  Taylor's parent company."

203.    Gamble sent text messages to several other franchise operators warning them that McDonald's and Taylor were about to issue an advertisement attacking Kytch.  In response, an operator named Danielle Marasco said that she thought Kytch was an effective product.  Gamble agreed and said that McDonald's and Taylor "are ***supposedly*** concerned with the safety issue of being able to remotely control the machine."

204.    Marasco replied with the true motivations for the disinformation campaign against Kytch: ***"They are upset they didn't invent it and they can't profit off it."***

205.    A few days later, McDonald's and Taylor made good on their promise to drive Kytch from the marketplace by fabricating safety concerns about the KSD.  On November 2, 2020, McDonald's and Taylor launched their false and deceptive disinformation campaign against Kytch.  Instead of promoting Open Kitchen through traditional advertising channels, McDonald's and Taylor issued a so-called "IMPORTANT NOTE" to publish false and disparaging statements of fact about the quality and nature of Kytch's product and services.

206.    On November 2, 2020, McDonald's and Taylor directed and published the following false and defamatory statements about Kytch.[16]

> We are pleased to share that the McDonald's GSSS-Equipment Team, in partnership with the NSLC Equipment Sub-Team, has been working on a strategic connectivity solution with Taylor for their Shake Sundae machine.  This solution will allow operators to receive text updates from their machine when it's down, and provide data on products dispensed, as well as other relevant information, to help restaurants keep the machine running in its optimal condition.  This solution is being designed with long term benefits in mind, and would enable future connection with other equipment in the restaurants.

> The Taylor Shake Sundae Connectivity (TSSC) is currently in test [sic] with NSLC operators and the current target for release in the US market is by the end of Q1, 2021.

> **IMPORTANT NOTE:** We have become aware that a few operators may be using an unapproved aftermarket technology, Kytch, on their Shake Sundae machine.  As a reminder, any operator that is using this aftermarket "add-on" to any of their machines, will completely void any existing OEM equipment warranty.  Additionally, any machine failures that are associated with the installation of Kytch during or after warranty expires, will be the sole responsibility of the operator, not the OEM supplier.  The Kytch device allows complete access to all aspects of the equipment's controller and confidential data, including areas where only certified technicians should have access, creating potential equipment reliability issues without the restaurant's knowledge or ability to stop it.  Even more concerning, McDonald's has recently determined that the Kytch device creates a potential very serious safety risk for the crew or technician attempting to clean or repair the machine, given that the Kytch controller may cause the device to change its operation or continue running during cleaning or maintenance, in a manner that can cause serious human injury.  As such, McDonald's strongly recommends that you remove the Kytch

---

[16] Taylor contributed to McDonald's advertisements by knowingly inducing and causing the false advertisements to be published, and Taylor directed and participated in McDonald's false advertising.

device from any machines and discontinue all use, and is reminding you that any continued use is not approved and is at your sole risk.

207.    On November 2, 2020, McDonald's and Taylor directed and published the following false and defamatory statements:

Taylor Shake Sundae Connectivity & Kytch Technology Update

McDonald's US Equipment Team, in partnership with NSLC, has been developing a strategic connectivity solution with Taylor for their Shake Sundae machine.  The solution will allow operators to receive text updates when their machine is down, view number of products dispensed, and get other information to keep the.  Machine running on optimal condition. ***The Taylor Shake Sundae Connectivity (TSSC) is currently in test with NSLC operators and the current target for release to the US market is by the end of Q1, 2021.***

***IMPORTANT SAFETY NOTE:*** We have become aware that a few operators may be using an unapproved after-market technology, Kytch, on their Shake Sundae machine.  This action will completely void any existing OEM equipment warranty.  More importantly, McDonald's and Taylor have recently determined that the Kytch device creates a potential very serious safety risk for the crew or technician attempting to clean or repair the machine due to its remote operation capability. ***As such, McDonald's strongly recommends that you remove the Kytch device from any machines and discontinue all use.  Any continued use is not approved and is at your sole risk.***

208.    McDonald's and Taylor's advertisements contain false claims about the Kytch Solution and Taylor's own products and services, including: (1) "the Kytch device creates a potential very serious safety risk for the crew or technician attempting to clean or repair the machine due to its remote operation capability"; (2) "the Kytch device creates a potential very serious safety risk for the crew or technician attempting to clean or repair the machine, given that the Kytch controller may cause the device to change its operation or continue running during cleaning or maintenance, in a manner that can cause serious human injury"; (3) the Kytch Solution is either not secure or is defectively designed such that its remote operation capabilities pose a safety risk; (4) the KSD presents an increased safety risk to Taylor soft-serve machines vis-à-vis Taylor machines without the KSD; (5) McDonald's and Taylor "recently determined" that the KSD poses a safety risk, even though no determination was made because McDonald's and Taylor deny ever having access to KSD; (6) the Kytch Solution "creat[es] potential equipment reliability

issues without the restaurant's knowledge or ability to stop it"; (7) the hidden and uncontrollable "potential equipment reliability issues" Kytch creates are materially different or more problematic than those caused by the C602 machines generally, or from repairs performed by a Taylor-certified technician; (8) Taylor was ready for commercialization and planned to release the "Taylor Shake Sundae Connectivity" project (Open Kitchen) by Q1 2021; and (9) Taylor's competing device had similar functionality to the Kytch Solution without presenting the supposed safety or reliability risks. These statements are either expressly contradicted or unsupported by McDonald's and Taylor's internal records.

209.    McDonald's and Taylor published multiple versions of this advertisement during the first week of November. One version makes the additional false claim that "the Kytch controller may cause the device to change its operation or continue running during cleaning or maintenance, in a manner that can cause serious human injury."

210.    McDonald's and Taylor sent these false advertisements in interstate commerce to all McDonald's restaurant operators and Taylor's global distributor network. This constituted the majority of Kytch's then-customers, and it was a large portion of Kytch's potential customer pool associated with McDonald's. The false advertisements and defamatory messages destroyed Kytch's goodwill with these third parties.

211.    McDonald's and Taylor also sent these and similar messages to RBI Brands and Coca-Cola in 2020 to further disparage and defame the Kytch Solution.

212.    McDonald's and Taylor knew that their accusations were baseless and that they would mislead consumers. But they issued the false advertisements as part of a stall tactic to buy more time to develop the Open Kitchen concept.

213.    The advertisements about Kytch are literally false and misleading in multiple respects.  ***First***, McDonald's and Taylor misled consumers into believing that they tested the KSD and factually "determined" that Kytch operates in an unsafe and dangerous manner.  This is false.  Taylor has claimed in litigation that it did not test the KSD for safety.  McDonald's and Taylor have also denied obtaining the KSD for testing.

214.    ***Second***, the advertisements are literally false because they state that the KSD is unsuitable or unsafe for use in kitchens, even though Intertek—one of the leading independent testing laboratories in the world—confirmed and certified that Kytch's products are safe for consumers and that they comply with both FCC requirements and safety standards promulgated by UL.

215.    ***Third,*** far from being a safety hazard or creating "reliability issues," the KSD improves the effectiveness of the C602 machines.  And, as explained above, Kytch's safety record is unblemished; the company has never received a single report of injury caused by the KSD.

216.    ***Fourth***, the KSD was designed to incorporate the safeguards Taylor designed in its machines.  This includes the magnetic interlock system and other safety features that prevent users from inadvertently engaging the machine's motor during cleaning and repair.

217.    ***Fifth,*** there is no basis for McDonald's and Taylor's assertion that Kytch functions "without the restaurant's knowledge or ability to stop it."  As McDonald's and Taylor know, Kytch's interface gives users complete monitoring ***and control*** of the KSD's functions.  This monitoring is not available on the C602 machines.

218.    McDonald's and Taylor intentionally disregarded these facts to convince customers to "remove the Kytch device from any machines and discontinue all use" of Kytch's products.

219.    The context and framing of McDonald's and Taylor's advertising further show that they intended to make—and made—false statements of fact about Kytch.

220.    McDonald's and Taylor purposefully used the words **"IMPORTANT NOTE"** in bold, capital letters to describe the "serious safety risk" and "serious human injury" to create the overall impression in the mind of reasonable consumers and readers alike that McDonald's and Taylor "determined"—through product safety testing or through other scientific findings—that the KSD posed a substantial hazard to health and safety.

221.    McDonald's and Taylor intentionally communicated to consumers that the KSD was technically unreliable, unsuitable to use in commercial kitchens, and dangerous to human health and safety.

222.    McDonald's and Taylor's false statements about Kytch had their intended effect.

223.    Shortly after receiving the false advertisement, Kytch's customers started canceling their subscriptions and cutting ties with Kytch.  Several Kytch subscribers said they believed the false and deceptive claim that the Kytch Solution "poses a safety risk" and is known to cause human injury.  They also stated that they had no choice but to wait until Q1 2021 to purchase Taylor's competing device.

224.    McDonald's and Taylor's false advertisements created these consumer reactions and permanently damaged Kytch's ability to compete in the marketplace.

***After Urging Consumers to Boycott Kytch, McDonald's and Taylor Directed Gamble and Others to Continue to Use the KSD to Help Taylor Incorporate Kytch's Technology into Open Kitchen.***

225.    McDonald's and Taylor's public advertisements describe Kytch as a dangerous, unreliable product.  Privately, however, McDonald's and Taylor relied on Kytch's active users to gain access to Kytch's proprietary insights leading into 2021.

226.    McDonald's and Taylor enlisted several Kytch customers to test Open Kitchen beginning in November 2020.  Taylor had promised to commercialize its Open Kitchen concept by Q1 2021, but McDonald's, Taylor and PHD never intended to meet this deadline.

227.    Rather, McDonald's and Taylor intentionally misrepresented Open Kitchen's release date to mislead consumers into believing that a solution to Taylor's broken machines was imminent.  By telling prospective purchasers that the Open Kitchen would be available soon, McDonald's and Taylor persuaded consumers to stop using—and to refrain from buying—Kytch's device.

228.    Desperate to appear that they would launch Open Kitchen during Q1 2021, McDonald's and Taylor targeted Kytch users—including Gamble, Eric Wilson, and David Balducci—to attend bi-weekly focus groups to jumpstart the development of Open Kitchen. Meeting minutes from the focus groups confirm that McDonald's and Taylor solicited "feedback from operator[s] using Kytch" to identify "[f]eatures from Kytch that [Open Kitchen] lack[ed]."

229.    McDonald's and Taylor continued to direct restaurant operators to use the Kytch Solution for at least three months after the November 2020 false advertisements.  During that time McDonald's and Taylor received feedback from Kytch's customers explaining that the Kytch Solution was safe, reliable, and that it would not cause "serious human injury."

230.    The documents further demonstrate that Taylor and PHD copied Kytch's design, user interface, features, and customer preferences.  If McDonald's and Taylor actually believed that Kytch was unreliable and unsafe, Taylor would not have systematically copied Kytch's technology and product offerings.

231.    In January 2021 PHD released images of the new device, and its offerings and trade dress are strikingly similar to the machine depicted in a Kytch user-video that was released years earlier.

232.    Specifically, of the hundreds of device functions within the respective products, the three functions PHD decided to animate in its marketing materials are identical to the functions depicted in Kytch's rendering.





233.    Additionally, information about the product that is available demonstrates that all of the features in the PHD's device are already within Kytch's product offerings.

234.   PHD's product provides servings reports that copy Kytch's methods for optimizing the C602 machines.

235.   PHD promised to offer real-time alerts for the same problems that Kytch was designed to monitor and adjust.

236.   In its current form, the Taylor soft-serve machine is incapable of connecting to the internet.  Therefore, PHD is likely adding a computing module (raspberry pi or the like) that has wi-fi capabilities.  Just like the KSD.

237.   PHD's version of Kytch references Kytch's landmark features, its design, and several components that were subject to binding non-disclosure agreements and that were not publicly available.[17]

*McDonald's, Taylor, and Middleby Have Repeatedly Misled Consumers with Empty Promises About the "Imminent Release" of Workable IoT Solutions.*

238.   In addition to misrepresenting the quality and nature of the Kytch Solution, McDonald's and Taylor assured consumers that they would launch Open Kitchen during Q1 2021. But Open Kitchen is still not on the market as of the time of this filing.

---

[17] Kytch filed a complaint Alameda County Superior Court based on trade secret misappropriation, breach of contract, and tortious interference with contract against Taylor, Gamble, and TFG. Taylor, McDonald's, and PHD responded by representing that they could not release Open Kitchen if the Court issued that injunction.  This is a striking admission that Open Kitchen has incorporated Kytch's technology using feedback from Kytch trial participants.

239.    Text messages from Gamble demonstrate that in January 2021—two months after the Open Kitchen announcement—Taylor knew it would be unable to meet the advertised release date.  Instead of the Q1 2021 deadline, Gamble hedged and assured restaurant operators that Open Kitchen "***should be*** made available by summer 2021."

240.    This is not the first time that McDonald's, Taylor, and Middleby have lied about their ability to fix Taylor's soft-serve machines.  McDonald's and Taylor contend that a fix is right around the corner whenever media outlets report on their broken machines.  But year after year, those fixes never materialize.

241.    For example, *Business Insider* published a story in March 2017 about the broken soft-serve machines.  A spokesperson for the company said that McDonald's was "finally replacing its ice cream machines, after years of complaints from customers."[18]  Four years later, McDonald's has not replaced its machines and the machines are still broken.

242.    Taylor marketed "an addition to" its supposed IoT platform, Taylor ATLAS (the precursor to Open Kitchen), throughout 2018.  Taylor promised that this new product would "provide[] customers the ability to monitor data and initiate service to avoid downtime with Taylor equipment."  But Taylor ATLAS had only rudimentary data acquisition and analysis capabilities and, unlike the Kytch Solution, did not allow users to fix malfunctioning soft-serve machines ***or to monitor the soft-serve machines in real-time***.

---

[18] Kate Taylor, *McDonald's is making a big change after years of complaints from customers*, Business Insider (Mar. 3, 2017), www.businessinsider.com/mcdonalds-is-getting-new-ice-cream-machines-2017-3.





243.    Taylor never released this product.

244.    As Taylor touted the ATLAS platform in Spring 2019, Middleby started advertising another IoT solution called Middleby Connect.    Middleby's marketing materials describe Middleby Connect as an "IoT-based equipment management system for the food service and baking industries" that provides "one point of access to all [] equipment across Middleby brands [and] orders."  Middleby Connect also promised to "save [customers] money on many aspects of operation" such as "updating programs and software."

245.    Middleby Connect supposedly "g[a]ve[s] [users] a quick and easy overview of all [their] equipment and can notify [them] before operational problems arise . . . [and allows] technician[s] . . . to see the service status of [] equipment and which components need replacement soon," facilitating "preventative maintenance, and more efficient service calls."



246.    These claims are false.  If Middleby Connect had the connective diagnostic and over-the-air update capabilities Middleby claimed, Taylor could have competed with the Kytch Solution—and it would not have developed Open Kitchen in the first place.

247.    Much like Taylor ATLAS, Middleby appears to have abandoned its Middleby Connect technology, and the Middleby Connect website (www.MiddlebyConnect.com) was deactivated around the time Kytch filed suit against Taylor in California state court in May 2021.



248.    In April 2019, Middleby acquired PHD, and later that year began marketing PHD's SiteSage technology as a "[c]onnected [k]itchen" "IoT [s]olution" for addressing, among other things, "equipment performance."

249.    SiteSage, like Taylor ATLAS, is a low-tech platform incapable of performing many of the complex diagnostic functions carried out by the Kytch Solution, and without the man-in-the-middle technology that allows users of the Kytch Solution to remotely interact with, and repair, Taylor soft-serve machines.

250.    SiteSage failed to provide a solution and it never launched as advertised.

### McDonald's and Taylor Published the False Advertisements with Reckless Disregard for the Truth.

251.    Before publishing their false advertisements, McDonald's and Taylor knew—but intentionally misrepresented, disregarded, and concealed—facts that disproved its false preconceived narrative that Kytch is unsafe or unreliable.  The facts include:

- The KSD successfully completed Intertek's rigorous, independent laboratory testing and satisfied applicable safety standards promulgated by the UL and the FCC.  These are the same standards that govern the soft-serve machines and other kitchen appliances in McDonald's.

- Intertek's seal of approval is featured prominently on the KSDs that Taylor accessed and viewed beginning in February 2020.

- The KSD integrates and is constrained by Taylor's existing safety mechanisms.  For example, the KSD utilizes Taylor's magnetic interlock system to disable the machines' control panel.  This immobilizes motor function to protect operators or technicians from being injured.

252.    Gamble provided this information to McDonald's and Taylor in October 2020. McDonald's and Taylor also knew the following facts before publishing the false statements about Kytch:

- Kytch improves the reliability of the C602 machines, as evidenced by numerous news reports reviewed by Taylor's CEO and COO, customer feedback Taylor received describing the increased uptime and improved functioning made possible via the KSD, and because Kytch's customers reported fewer machine outages and their service requests decreased.

- Despite their representations to the contrary, McDonald's and Taylor never actually "determined" that Kytch was unsafe or unreliable. They fabricated those concerns to drive Kytch out of the marketplace as a stall tactic to buy more time to develop Open Kitchen.

- McDonald's and Taylor know the "reliability issues" are caused by their own machines. For decades McDonald's and Taylor have admitted that the machines are notorious for breaking down.

253.    McDonald's and Taylor manufactured the safety concerns as part of their preconceived narrative to destroy Kytch's business. McDonald's and Taylor created this narrative in February of 2020 a short time after *Business Insider* reported on Kytch's early successes. Kytch was Taylor's only competition in the marketplace, and Taylor knew that restaurant operators would adopt Kytch's innovative technology to reduce overhead and increase revenue by improving ice cream sales. In February 2020, McDonald's and Taylor's leadership explained to McDonald's franchise operators Gamble and Wilson that it would deploy the false safety claims about the KSD when Kytch gained traction in the market.

254.    McDonald's and Taylor also intentionally avoided obvious sources of information that contradicted its statements.  For example, McDonald's and Taylor did not contact Intertek or the FCC to raise these safety concerns. McDonald's and Taylor  have also never communicated with Kytch founders Jeremy O'Sullivan or Melissa Nelson about Kytch's safety.

255.    McDonald's and Taylor's accusations are also inherently improbable.  The largest organization of independent McDonald's franchise operators in the world endorsed Kytch as an effective and reliable solution to fix Taylor's soft-serve machines.  McDonald's and Taylor  knew that many of these franchise operators were directly involved in McDonald's product development efforts, and that they had spent thousands of hours using and observing the KSD.  The National Owners Association would not have endorsed Kytch's product if Taylor's explosive safety claims were true.

256.    Indeed, the October 2020 endorsement from the National Owners Association triggered Taylor's false advertisements against Kytch.  As demand for Kytch grew, McDonald's informed Taylor that its independent owners were pressuring corporate leadership to adopt Kytch into the McDonald's system to alleviate the exorbitant repair fees they were being forced to pay Taylor.

257.    Taylor's solution was not ready for market and McDonald's and Taylor needed a stall tactic to buy more time to develop Open Kitchen.  So they manufactured the false ads attacking Kytch's safety record and reliability.  They also falsely claimed that Open Kitchen would be released in Q1 of 2021 despite knowing that they needed more than a year to develop their technology.

258.    McDonald's and its longtime partner Taylor also had a strong financial motive to misrepresent the facts about Kytch's products and about their own products.  Kytch threatened to

shed light on the true reason that McDonald's soft-serve machines are always broken: to protect Taylor's repair racket.  This would cause immense reputational harm to McDonald's and Taylor among the public and from the independent franchise operators that are forced to pay unnecessary service and repair fees.  By contrast, if Taylor commanded the market for soft-serve machine IoT devices then all the data would remain in Taylor's hand's, allowing McDonald's and Taylor to keep control of the information and the narrative.

259.    Further, Taylor would provide McDonald's with a monopoly on the new technology.  This would allow McDonald's to tout the innovation and its exclusivity, placating franchise operators who are frustrated with the machines' frequent outages and downtime.

260.    Separate and apart from these pre-publication indicators of its actual malice, Taylor's conduct *after* publication provides even more evidence of its actual malice and disregard for the truth.  Despite instructing users to "discontinue use" of Kytch's products based on the false safety claims, from November 2020 through January 2021, McDonald's and Taylor directed a subset of customers to continue to use KSDs so that Taylor could incorporate Kytch's innovations into Open Kitchen.

### McDonald's and Taylor Doubled Down on Their False Claims Even After Kytch Provided Formal Written Notice of the Facts.

261.    Kytch tried to mitigate the harm caused by McDonald's and Taylor's false advertisements by demanding a full retraction on December 7, 2020.  The letter provided "written notice of the falsity of Taylor's claims about Kytch" and explained why Taylor's claims are false and defamatory:

> There is absolutely zero support, whatsoever, for Taylor's claim that Kytch "creates a potential very serious safety risk" or its accusation that Kytch "can cause serious human injury."  Tellingly, Taylor has failed to even attempt to corroborate its prevarications about Kytch's safety record.  In fact, Kytch underwent extensive product testing and certification at Intertek during product development to ensure that it satisfies all Underwriters Laboratories (UL) electrical safety requirements. Kytch conforms to ULL STD 62368-1

and has successfully completed EMC testing consistent with the requirements of 47CFR Subpart B§§ 15.101 -15.123.  There have not been any reported "human injur[ies]" of any kind that were caused by Kytch's devices.  To be clear, Kytch does not permanently alter the machine, and it certainly does not disable or otherwise negate any of the machine's factory-installed safety mechanisms.  The opposite is true: Kytch warns the user when a particular component of the machine may fail and it monitors how often and effectively each machine is cleaned, thus optimizing operating conditions.

Moreover, Kytch was designed to complement the existing safety tools, including but not limited to quality control of the ice cream's temperatures.  The "IMPORTANT NOTICE" fails to provide substantive details regarding what supposedly makes Kytch unsafe to operate.  It does, however, claim that Kytch is "creating potential equipment reliability issues without the restaurant's knowledge or ability to stop it."  This is a complete fabrication.  Rather, Taylor has intentionally created "equipment reliability issues" for years, and its service department has charged hundreds of millions of dollars in fees for repairs that Taylor itself caused.  Taylor's claim that Kytch's remote-control capabilities present a safety hazard is also manifestly false.  Kytch's functionality only permits users to control a machine in the same way that the machine is operated without Kytch.  For example, just like a human operator, Kytch can only utilize the same functions that are available to workers using a Taylor machine without Kytch.  In other words, Kytch is restricted by all of the same safety mechanisms that constrain human operators.

262.    A copy of the December 7, 2020 letter is attached as **Exhibit 2.**

263.    On September 21, 2021, Kytch sent a retraction demand letter to McDonald's explaining, once again, that McDonald's and Taylor's claims about Kytch were false and defamatory:

> McDonald's has long known that Kytch presents no safety hazard to individuals "attempting to clean or repair" the machines.  ***First, Kytch disables automation features when any user is cleaning the interior of the machine or pressing buttons on the control panel.***  Kytch cannot remotely engage the soft-serve machines' motors when the freezer door is removed. Kytch co-founder Jeremy O'Sullivan explained all of this, in no uncertain terms, to McDonald's Equipment Team Leader Tyler Gamble less than two weeks before McDonald's false advertisement.  This, alone, should have resolved any safety concerns about Kytch somehow causing serious human injury.
>
> ***Second***, Intertek has conducted extensive product testing and concluded that the Kytch Solution satisfies all electrical safety requirements in accordance with United Laboratory (UL) regulations.  Kytch conforms to UL STD 62368-1 and has successfully completed EMC testing consistent

with the requirements of 47 CFR Subpart B    15.101 -15.123.  Indeed, the UL regulations are the standard to which Taylor's soft-serve machines in thousands of McDonald's restaurants must adhere.  In fact, according to Taylor's own marketing materials, "***most*** [] Taylor equipment is approved for electrical safety through Underwriter's Laboratories (UL) regulations." Taylor Food Company, FAQs – Technical and Electrical, https://www.taylor-company.com/en/about/faq.

***Third***, while McDonald's was encouraging its franchisees to abandon Kytch's product with the fraudulent "Safety Note," it was simultaneously urging franchisees in leadership and on its Equipment Team to continue using the product so that McDonald's and Taylor could unfairly compete against Kytch. If the "safety" concerns were legitimate, McDonald's would have told its own Equipment Team to stop using Kytch as well.

264.    A copy of the September 21, 2021 letter is attached as **Exhibit 3.**

265.    McDonald's and Taylor disregarded Kytch's retraction demands and failed to respond to the merits of Kytch's letters.  To date, they have refused to retract their false and damaging accusations against Kytch.

### McDonald's and Taylor's Tortious and Unlawful Conduct Destroyed Kytch's Business.

266.    McDonald's and Taylor's tortious conduct grievously injured Kytch—a fast-growing company with devoted customers—at a critical time in its development, destroying the business.

267.    Kytch's enterprise value is a fraction of what it was before McDonald's and Taylor's disparaging ads.  Kytch's reputation has become tainted by McDonald's and Taylor's false claims that the KSD is unsafe, known to cause human injury, and unreliable.

268.    McDonald's and Taylor's statements have undermined public trust and consumer confidence in Kytch and in the security and reliability of its hardware and software solutions.

269.    The statements go directly to the heart of Kytch's trade.  Kytch spent years in product development to create a safe solution to modernize Taylor's soft-serve machines.

270.    Kytch entered the market in late 2019 and roughly doubled its customer base each quarter over its first year of operation. As of October 2020, Kytch had 425 subscribers and a 93% customer retention rate.  Due to the significant value the Kytch Solution offered to franchise owners, the company was able to successfully raise prices three times in its first year of operation—from a $0 activation fee and $10 per month, to a $250 activation fee and $29 per month, to a $250 activation fee and $39 per month.  Kytch further anticipated raising prices one more time to charge $49 per month.

271.    Beyond the activation fee and subscription fee revenues it was already collecting from its customer base, in October 2020 Kytch had four additional products in development. ***First***, Kytch was testing a remote diagnosis service, offering basic service and advice via telephone and online chat.  ***Second***, Kytch's planned e-commerce business would sell replacement parts for Taylor machines and connect them with qualified repair technicians outside the Taylor network. ***Third***, Kytch planned to launch an "API and Data" business, which would monetize the treasure trove of data Kytch was gathering by observing the Taylor machines.  This product relied upon the growth of the Kytch Solution to gather data.  ***Fourth***, Kytch planned its own operating system, which would be licensed to commercial grade appliance manufacturers like Taylor.

272.    Kytch was also in serious talks with prominent Silicon Valley Venture Capital firms to raise a $10 million Series A, on a $50 million dollar valuation.

273.    McDonald's and Taylor's conduct radically changed the business landscape for Kytch—its good will among restaurant franchise owners has been destroyed, its business has dried up, and Kytch's innovative solutions are now in McDonald's and Taylor's hands.

274.    Beginning in November 2020, Kytch lost nearly all its existing customers, cratering to just 83 renewing devices in 2021.  Despite its prior growth (Kytch sales were doubling each quarter), Kytch has attracted essentially no new customers.

275.    Kytch was forced to abandon its plans to develop new product lines when McDonald's and Taylor decimated Kytch's client base— without subscribers, the product lines are no longer a viable model.

276.    Kytch has lost millions in profits to date and will lose many millions in profit in the years to come.  Kytch's valuation has plummeted to as low as $3 million.

277.    By contrast, Taylor has continued to rake in $75 million in annual revenue from its repair racket at McDonald's and other restaurants.

## CAUSE OF ACTION[19]

### False Advertising - Lanham Act (15 U.S.C. § 1125(a)(1)(B))

278.    Kytch repeats and re-alleges every allegation set forth in this Complaint.

279.    Beginning on November 2, 2020, Taylor—working jointly and in concert with McDonald's—arranged for false and deceptive advertising to be distributed in interstate commerce via the internet to thousands of McDonald's franchise operators and thousands of Taylor customers, factory-trained technicians, and distributors, across the world.

280.    McDonald's and Taylor directed these advertisements to consumers and the public.

281.    The advertisements contain false claims about the Kytch Solution and Taylor's products and services, including:

---

[19] The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these claims all readings that might otherwise be construed to be outside of their scope.

i.      "the Kytch device creates a potential very serious safety risk for the crew or technician attempting to clean or repair the machine due to its remote operation capability";

ii.     "the Kytch device creates a potential very serious safety risk for the crew or technician attempting to clean or repair the machine, given that the Kytch controller may cause the device to change its operation or continue running during cleaning or maintenance, in a manner that can cause serious human injury";

iii.    the Kytch Solution is either not secure or is defectively designed such that its remote operation capabilities pose a safety risk;

iv.     the KSD presents an increased safety risk to Taylor machines vis-à-vis Taylor machines without the KSD;

v.      McDonald's and Taylor "recently determined" that the KSD poses a safety risk by product safety testing or other scientific analysis;

vi.     the Kytch Solution "creat[es] potential equipment reliability issues without the restaurant's knowledge or ability to stop it";

vii.    the "potential equipment reliability issues" Kytch creates are materially different or more problematic than those resulting from Taylor machines generally, or from repairs performed by a Taylor-certified technician;

viii.   Taylor planned to release Open Kitchen in the US market … by the end of Q1, 2021";

      ix.    Taylor was ready for commercialization and had incorporated the necessary technology to release the "Taylor Shake Sundae Connectivity" by Q1, 2021; and

      x.    the Taylor Shake Sundae Connectivity device would offer similar functionality to the Kytch Solution without the supposed safety or reliability risk.

282.    McDonald's and Taylor's claims are false because they conflict with reality in several ways, as set forth above.

283.    McDonald's and Taylor's claims had the tendency to deceive a substantial segment of the target audience, Taylor intended that they deceive the target audience, and they did in fact deceive the target audience.

284.    Because McDonald's and Taylor's false claims concerned health, safety, and inherent characteristics of the products at issue, consumers necessarily found them to be material.

285.    Further, the facts show that consumers in fact found McDonald's and Taylor's false claims to be material to their purchasing decisions. Among other things, Kytch's customers started cancelling their subscriptions and returning KSDs immediately following the November 2, 2020 advertisements and Kytch's business collapsed. Customers also specifically informed Kytch that they credited the representations and found them to be material. For example, on November 6, 2020, one Kytch customer stated that he was cancelling his subscription because of the "determination" that the Kytch Solution "poses a safety risk." Another customer explained that Taylor was "actually working out a similar-type-deal in-house," and that he, too, was withdrawing from the Kytch Trial based on Taylor's bogus safety concerns.

286.    Taylor is jointly and severally liable for both its own false claims about Kytch and the similar claims McDonald's disseminated to all U.S. operators because McDonald's and Taylor

worked together to develop the false message, and each contributed to the dissemination of the communication.

287.    McDonald's and Taylor's false claims eroded Kytch's goodwill among consumers and caused Kytch's customers and prospective customers to cease doing business with Kytch.

288.    Instead, consumers chose McDonald's and Taylor's forthcoming competing product or chose to continue relying on Taylor's costly replacement parts and repair services.  This led to the virtual destruction of Kytch's business and provided McDonald's and Taylor with ill-gotten gains.

289.    Kytch demands that McDonald's and Taylor be ordered to account for and pay to Kytch all gains, profits, and advantages derived by McDonald's or Taylor from the above-described wrongful acts and that the Court issue an order multiplying or otherwise enhancing any award under the Lanham Act.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Kytch respectfully requests that the Court enter an award and judgment in its favor, and against Taylor, as follows:

(a)    awarding all appropriate injunctive relief, including ordering that:

      i.    Taylor, its officers, agents, servants and employees, and all people or entities in active concert and participation with it be preliminarily and permanently enjoined from further disseminating the false and deceptive claims described herein in any form or medium;

      ii.    Taylor withdraw and retrieve all offending communications from the marketplace;

      iii.    Taylor disseminate corrective communications to dispel the false and deceptive messages described herein;

(b)    awarding Kytch general compensatory damages in an amount to be determined at trial;

(c)    awarding Kytch damages for (1) lost profits; (2) lost enterprise value; and (3) out-of-pocket expenses incurred combatting McDonald's and Taylor's false statements;

(d)    awarding Kytch exemplary and punitive damages;

(e)    awarding Kytch pre- and post-judgment interest;

(f)    awarding Kytch all expenses and costs, including attorneys' fees; and

(g)    such other further relief as the Court deems appropriate.

<u>**DEMAND FOR JURY TRIAL**</u>

Kytch hereby demands trial by jury for all causes of action, claims, or issues in this action that are triable as a matter of right to a jury.

Dated: May 5, 2022

Respectfully submitted,

FARNAN LLP

By: /s/Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com


Of Counsel:

CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
(202) 628-7407
Elizabeth M. Locke, P.C.
Daniel P. Watkins
libby@clarelocke.com
daniel@clarelocke.com

IRELL & MANELLA LLP
1800 Avenue of the Stars Suite 900
Los Angeles, CA 90067
(310) 277-1010
Jason Sheasby

*Attorneys for Plaintiff Kytch, Inc.*